UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Baja, Inc., | ) | |
| | ) | C/A No.: 8:13-cv-02057-GRA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | (Written Opinion) |
| Automotive Testing and Development | ) | |
| Service, Inc., Chongquin Huansong | ) | |
| Industries (Group) Co., Ltd., Tomoto | ) | |
| Industries, Inc., and Hisun Motors Corp. | ) | |
| U.S.A., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter comes before the Court on Defendants Chongquin Huansong Industries (Group) Co., Ltd. and Hisun Motors Corp. U.S.A.'s Motion to Compel Arbitration and Stay Proceedings, filed on March 28, 2014.  ECF No. 79.  For the reasons set forth below, Defendants' Motion is DENIED.

## Background

Defendants Chongquin Huansong Industries (Group) Co., Ltd. ("Huansong") and Hisun Motors Corp. U.S.A. ("Hisun") move this Court "to enforce an arbitration clause that was specifically negotiated by the parties' authorized representatives." ECF No. 79-1.  Defendants base their Motion on arbitration agreements set forth in pro forma invoices provided to Plaintiff Baja, Inc. ("Baja").  *Id.*  These invoices were signed by Baja's representative when Baja and Huansong "entered into a series of written contracts for the purchase and sale of scooters manufactured in China" for importation into the United States.  *Id.*  Additionally, Defendants state that Huansong's Chairman of the Board, Song Li, and Baja's founder, President, and CEO

met and agreed that the purchase of these scooters would be subject to arbitration in Beijing, even before the parties engaged in the transactions that are at the center of this dispute. *Id.* Based on these arbitration agreements, Defendants move this Court "for an order to compel Plaintiff's claims to arbitration pursuant to 9 U.S.C. § 206 and to stay proceedings pursuant to 9 U.S.C. § 3." ECF No. 79.

Baja responded in opposition to Defendants' Motion on April 14, 2014. ECF No. 81. Defendants Huansong and Hisun replied in support of their Motion on April 24, 2014. ECF No. 83. Baja filed a Supplemental Memorandum in Opposition on May 15, 2014. ECF No. 88. Defendants Huansong and Hisun filed a Response to Baja's Supplemental Memorandum on May 20, 2014. ECF No. 89. This matter is now ready for ruling.[1]

### **Standard of Review**

The Federal Arbitration Act ("FAA"), codified at 9 U.S.C. § 1 *et seq.*, establishes a "strong federal public policy in favor of enforcing arbitration agreements," and is designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–19 (1985). The FAA was enacted by Congress in 1925 "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts." *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). "Underlying this policy is Congress' view that arbitration constitutes a

---

[1] "Hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Local Civil Rule 7.08 DSC.

more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (internal citations omitted).

The FAA provides that arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute. 9 U.S.C. §§ 2-3. But, if the validity of the arbitration agreement is in issue, a district court must first decide if the arbitration clause is enforceable against the parties. 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "A court should not deny a request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 349–350 (internal quotations omitted).

However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *Adkins*, 303 F.3d at 501 ("[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." (internal quotations omitted)). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins*, 303 F.3d at 501 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[G]enerally applicable contract defenses, such as fraud, duress, or

unconscionablity, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## Discussion

Defendants state that Baja and Huansong entered into a series of contracts, in the form of invoices, "which were signed by Jason Bodine, an authorized representative of Baja." ECF Nos. 79-1 & 79-2; *see* ECF No. 79-3. Each signed pro forma invoice contained the following arbitration provision:

> All disputes arising from the execution or, of [sic] in connection with this contract, shall be settled amicably through friendly negotiation. In case no settlement can be reached through negotiation, the case shall then be submitted to The Foreign Trade Arbitration Commission of the China council For The Promotion of International Trade, Beijing, for arbitration [in] accordance with its provisional rules of procedure. The arbitral award is final and binding upon both parties. In case of any disput [sic] on the quality of the products, it will be justified by China Import and Export Commodity Inspection Bureau with their inspection result.

ECF No. 79-2. In addition, Defendants argue that "[p]rior to entering into the Contract, the CEO and President of Baja met with Song Li, Chairman of Huansong's Board, and they agreed that the parties would arbitrate any dispute arising from the sale of SC-50 scooters in Beijing, China." ECF Nos. 79-1 & 79-3.

Based on the arbitration language contained in the pro forma invoices, Defendants argue that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which Congress implemented by enacting Chapter 2 of Title 9 of the United States Code, is applicable and governs this Motion.

ECF Nos. 79-1 & 83; *see* 9 U.S.C. § 201.  Additionally, Defendants note that "Baja does not dispute that the Motion to Compel is governed by Chapter 2 of the Federal Arbitration Act."  ECF No. 83.  Defendants assert that this current lawsuit falls within the scope of the pro forma invoices' arbitration provision, which covers "[a]ll disputes arising from the execution or, of [sic] in connection with this contract."  ECF Nos. 79-1 & 79-2.  Defendants argue that Plaintiff's claims arise from, or in connection with, the underlying contract containing the Arbitration Clause and are therefore arbitrable, as Plaintiff's claims deal with "whether Huansong provided scooters to Baja which were EPA compliant," and these scooters were purchased pursuant to contracts containing an arbitration provision.  ECF No. 79-1.  Additionally, Defendants assert that this Court has jurisdiction because the agreement to arbitrate is in writing; the agreement provides for arbitration in China, which is a signatory to the convention; the legal relationship between the parties is commercial because it "arises out of the purchase and sell [sic] of scooters;" and the contract at issue is related to a foreign state because "Huansong is a corporation organized and existing under the laws of China." ECF Nos. 79-1 & 79-2; *see* 9 U.S.C. § 202 ("An arbitration agreement . . . arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the Convention.").

Baja argues that "[t]his Court should deny the Motion for several reasons." ECF No. 81.  First, Baja asserts that no arbitration agreement exists between Huansong and itself.  *Id.*  Second, Baja argues that even if an agreement to arbitrate exists, Huansong waived its opportunity to seek arbitration because compelling arbitration at this stage in the litigation "will cause actual prejudice, both strategic and

financial, to Baja." *Id.* Finally, Baja argues in the alternative that "even if there is a valid agreement to arbitrate that has not been waived and would not cause prejudice to enforce, that agreement does not cover all disputes and does not cover all parties." *Id.* This Court will address each of Baja's arguments below.

## I. Existence of an Agreement to Arbitrate

Baja first argues that there is no agreement with Huansong to arbitrate. *Id.* Baja asserts it "placed its first order for SC50 scooters from Huansong" in June 2007, and continued to place orders for approximately the next 18 months, through November 2008. *Id.*; ECF No. 81-2. Baja argues that Defendants' Motion "incorrectly claims these purchases were only made between March through September 2008, and incorrectly claims these purchases were conducted pursuant to terms including an agreement to arbitrate disputes." ECF No. 81. Baja grounds its assertions on the fact that "Huansong did not sign any of the 15 draft invoices upon which it now relies," and argues that "these draft invoices were superseded by the final invoice, signed by Huansong, which [does not contain an] arbitration clause." *Id.* Baja explains that, for each purchase, it sent Huansong a Purchase Order, which did not contain an arbitration provision. *Id.* Huansong replied to these Purchase Orders with either a Sales Confirmation, containing payment terms but no arbitration provision, or a Purchase Order Confirmation Report (POC). *Id.* After shipment of the units to Baja's retail customers, Huansong sent proof of shipment which "contained a final invoice mirroring the terms of the purchase order," but which did not contain an arbitration provision. *Id.* Baja argues that Huansong's "proforma invoices . . . were not referenced in the ongoing emails between Baja and Huansong," and that "Huansong

has not provided documentation that [the invoices] were actually sent to Baja." *Id.* Additionally, "the final invoices which Baja actually paid do not contain the same invoice number as the proforma invoice." *Id.* Baja admits that it has "four records where proforma invoices were sent," but asserts that they were sent "for only two kinds of unique orders." *Id.*

Moreover, Baja disputes the existence of an oral agreement to arbitrate, allegedly formed during negotiations in a meeting with Huansong. *Id.* Baja asserts that the "only evidence of this meeting is contained in Richard Godfrey's declaration," and that this declaration "should be rejected both because Godfrey is not an independent witness as he is aligned with Huansong, and because the declaration is not supported by the evidence." *Id.*; ECF No. 79-3. "Godfrey was Baja's President from 2004 until he was fired in June 2009," and then "began competing with Baja in the recreational vehicle market and worked with Huansong," despite a non-compete clause in his employment contract with Baja. ECF Nos. 81 & 81-2. Baja sued Godfrey on July 20, 2009, and while this case ultimately settled, Baja asserts that "Godfrey obviously retains resentment against Baja." ECF Nos. 81 & 81-2. Godfrey currently works for a competitor of Baja that purchases products from Huansong and Hisun. ECF Nos. 81 & 81-2. Additionally, Baja states that Godfrey's declaration "has no documentary support and his recollection is inconsistent with the documentary evidence." ECF No. 81. Additionally, Baja points out that Godfrey fails to provide specific details about the meeting, such as where it occurred, when it occurred, and what language was spoken. *Id.*

Baja further argues, in support of its position that no arbitration agreement exists, that "it defies belief such argument would not have been raised at the beginning of this lawsuit," because the meeting referred to in Godfrey's declaration included Song Li, Huansong's current President.  *Id.*; ECF No. 49-1.  Additionally, "Huansong provided the 'proforma' invoices in its November 23, 2013 document production."  ECF No. 81.  Thus, Baja takes the position that if the meeting to discuss an arbitration agreement actually occurred, and if the pro forma invoices were legal contracts, then these issues would have surfaced during the eight months of litigation prior to the filing of this Motion.  *Id.*

Defendants Huansong and Hisun, in response to Baja's first argument, assert that "Baja did not and could not deny that [it] agreed to the arbitration clause contained in the Proforma Invoices and signed by an authorized agent for Baja."  ECF No. 83.  Defendants assert that Baja's "battle of the forms" argument that the final invoices superseded the Proforma Invoices is irrelevant, as "an arbitration provision is severable from the remainder of the contract."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); ECF No. 83.  Defendants also argue "that the Shipping Invoices do not contain all the terms agreed to by the parties" and do not expressly acknowledge that they supersede the Proforma Invoices.  ECF No. 83.

Defendants emphasize that Baja incorrectly describes the "billing and invoicing procedures," and does not account "for how Baja's authorized agent Jason Bodine's signature is reflected on the invoices they allegedly never received."  *Id.*  Defendants state that for each purchase, Baja sent a Purchase Order to Huansong containing a tentative price.  *Id.*; ECF No. 83-1.  Huansong "would then draft and send a Proforma

Invoice to Baja," which contained an arbitration provision, among other terms, and then "an authorized agent of Baja would sign the Proforma Invoice and return the signed copy to Huansong." ECF Nos. 83 & 83-1. Huansong would then prepare the ordered units, and when the units were ready for shipment, Huansong prepared the container and a "Shipping Invoice." ECF Nos. 83 & 83-1.

Additionally, despite agreeing with Baja that "Huansong's production did not include Proforma Invoices for several orders after March 2008," Defendants argue that the Arbitration Agreement covers all of Baja's purchases from Huansong. ECF No. 83. Defendants initially note that eight additional invoices have been located to cover some of these orders, and explain that "Huansong does not have copies of [other invoices prior to March 2008] due to the fact that prior to March 2008, Huansong used a different export company . . . who took these invoices with it when the companies parted ways." ECF Nos. 83 & 83-1. Defendants further assert that an oral agreement to arbitrate was reached between the parties, as alleged in Godfrey's Declaration. ECF Nos. 83 & 83-3; *see In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 280 (4th Cir. 2007) (concluding that the "evidence is sufficient to establish that arbitration is a usage of trade," such that "the oral contracts included an agreement to arbitrate notwithstanding the fact that arbitration was not mentioned in the telephone conversations"). In their reply, Defendants dismiss Baja's assertion that "Godfrey is not a neutral witness," stating that "[m]erely showing a reason why someone could suspect a witness's neutrality is not a reason for the court to summarily reject factual evidence presented by that witness." ECF No. 83. Thus, Defendants ask this Court to enforce the agreement to arbitrate, despite the missing written invoices. *Id.*

Defendants posit that they have presented sufficient evidence "showing the existence of an enforceable agreement to arbitrate," so as to shift the burden "to the party opposing arbitration to present evidence showing why arbitration is improper." ECF No. 83.

"The party who seeks to compel arbitration must establish '(1) [t]he making of the agreement and (2) the breach of the agreement to arbitrate.'" *Shaffer v. HSBC Bank Nev., Nat'l Ass'n*, No. 5:12-cv-00968, 2012 WL 1832893, at *2 (S.D.W. Va. May 18, 2012) (quoting *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.*, 656 F.2d 933, 939 (4th Cir. 1981) (en banc), *aff'd*, 460 U.S. 1 (1983)). "Whether a contract is valid and enforceable is governed by the contract formation and interpretation principles of the forum state." *Id.* (citation omitted). "Nevertheless, when determining the scope of a valid arbitration clause, a federal district court is to use the 'federal substantive law of arbitrability.'" *Id.* (internal quotation marks and citations omitted).

In this case, Defendants Huansong and Hisun bear the burden of showing that a valid arbitration agreement exists. Defendants have met their burden by showing that the pro forma invoices contained an arbitration provision and were signed by a representative of Baja. ECF No. 79-2. Additionally, Defendants have provided sufficient evidence of a meeting where Godfrey, acting on behalf of Baja, discussed the terms of the agreement with Song Li, acting on behalf of Huansong, and the parties agreed that the purchase of scooters would be subject to arbitration in Beijing, China. ECF No. 79-3.

Baja urges this Court to "not lose sight of Huansong's deceit and trickery that permeates all aspects of this case." ECF No. 81. However, "in passing upon a § 3

application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *C.B.S. Emps. Fed. Credit Union v. Donaldson Lufkin & Jenrette Secs. Corp.*, 912 F.2d 1563, 1567–68 (6th Cir. 1990) (explaining that the court should adjudicate fraud claims relating to the making of the arbitration agreement, but "when the issues in dispute do not involve the making or the performance of the section 3 arbitration clause itself, the agreement's arbitration clause is enforced and the parties' dispute must be submitted by resolution by arbitration."). Accordingly, this Court finds that Defendants have shown that a valid arbitration agreement exists between Baja and Huansong.

## II. Waiver of the Agreement to Arbitrate

As its second argument, Baja asserts that "[e]ven if there was an arbitration agreement," Huansong has waived its opportunity to seek arbitration due to its "delay in seeking arbitration" and utilization of litigation which has progressed to a point where Baja would suffer actual prejudice if the request for arbitration is granted. ECF No. 81.

"Under the FAA, a party may lose its right to compel arbitration if it 'is in default in proceeding with such arbitration.'" *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 702 (4th Cir. 2012) (quoting 9 U.S.C. § 3). "Although this principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985). "A litigant may waive its right to [arbitration] by so substantially utilizing the litigation

machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Id.*; *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987) ("Where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised." (quoting *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1161 (5th Cir. 1986)))

   "Our key inquiry is whether the party opposing the stay has suffered any actual prejudice." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996). "Although mere delay, without more, will not suffice to constitute waiver, . . . delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Id.* (internal quotation marks and citations omitted); *Rota-McLarty*, 700 F.3d at 702 ("Two factors specifically inform our inquiry into actual prejudice: (1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity."); *Hasco, Inc. v. Schuyler, Roche & Zwirner*, 172 F.3d 43, 1998 WL 957454, at *2 (4th Cir. Sept. 22, 1998) (unpublished per curiam decision) ("The actual prejudice required to support a finding of waiver can be substantive prejudice to the legal position of the party opposing arbitration. . . . or the unnecessary delay or expense that results when an opponent delays invocation of its contractual right to arbitrate." (internal quotation marks and citations omitted)). Prejudice may also be found where the party seeking arbitration has "availed itself of discovery procedures unavailable in arbitration." *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200, 207 (4th Cir. 2004). "The party opposing

the stay bears the heavy burden of proving waiver." *Am. Recovery Corp.*, 96 F.3d at 95 (citation omitted).

Baja argues that it will be substantially prejudiced "if Huansong's request for arbitration were granted." ECF No. 81. Baja states that "Huansong made no effort for eight months after litigation was filed to enforce the purported arbitration clause in the proforma invoices." *Id.* Baja filed its complaint on July 26, 2013, ECF No. 1, and Huansong did not mention any applicable arbitration agreement that would govern this dispute until March 24, 2014, the final day of discovery, *see* ECF No. 44. On that day "Huansong unilaterally canceled a noticed Rule 30(b)(6) deposition on the grounds that it was going to seek arbitration." ECF Nos. 81 & 81-4. Huansong then filed the present Motion to Compel Arbitration and Stay Proceedings on March 28, 2014. ECF No. 79. Baja points out that "the purported arbitration provision was the product of an agreement between Huansong's current chairman of the Board and Baja's former CEO in 2008," and therefore Huansong was aware of this arbitration provision throughout the present litigation. ECF Nos. 79-1 & 81.

Baja further argues that it "will suffer substantial actual prejudice" in "both financial and strategic" ways. ECF No. 81. First, Baja asserts that deciding this case in China "would come at great expense to Baja," as much of the work that Baja has already done would be unnecessary given the differences in rules between the two forums, and Baja "would have to retain new counsel with experience in the Chinese arbitration forum and its procedures." *Id.* Baja states that it has incurred $144,000 in fees, costs, and expenses, and another $33,000 in additional fees and costs in responding to Huansong's summary judgment motion. ECF Nos. 81 & 88. The

arbitration provision requires the case to be submitted to The Foreign Trade Arbitration Commission of the China Counsel for the Promotion of International Trade, Beijing, ECF No. 79-1, which is now known as the China International Economic and Trade Arbitration Commission ("CIETAC"), ECF No. 81.  Baja states that "CIETAC rules do not allow for discovery," meaning that Baja has "engaged in significant discovery, at great expense" that would not have been necessary if Huansong had made a timely demand for arbitration.  ECF No. 81 (discussing the substantial fees and costs in this litigation that would be wasted if arbitration is compelled, including extensive document discovery and costs in preparing for the Rule 30(b)(6) deposition of Huansong's corporate representative).  Additionally, Baja states that "CIETAC Rules provide no opportunity for the parties to produce expert reports or expert witness testimony."  *Id.* (discussing the three experts retained by Baja and the over additional $45,000 in fees and expenses and $5,900 in last minute fees and expenses involved in this preparation).  Moreover, Baja asserts that these costs are not simply "expenses" that Baja "would have incurred irrespective of the timing or the fact of [Huansong's] motion" to compel arbitration, and therefore, these costs constitute actual prejudice to Baja.  *Id.* (quoting *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 589–90 (4th Cir. 2012)).

Second, Baja asserts that it would be strategically disadvantaged because "Huansong will have availed itself of significant discovery that would have been unavailable in the Chinese arbitral forum," as discussed above.  *Id.*; *see Patten Grading & Paving, Inc.*, 380 F.3d at 207 (discussing cases where a party "gained a strategic advantage through its discovery requests").  Baja argues that Huansong has

waived its right to invoke the FAA by "substantially utilizing the litigation machinery" during the eight months of litigation leading up to this Motion. ECF No. 81 (quoting *Maxum*, 779 F.2d at 981). Baja states that "Huansong requested and received 1,428 documents from Baja that it would not have been able to obtain in China because there is no discovery in CIETAC arbitration." *Id.* Additionally, "Huansong received the reports of all three of Baja's expert witnesses, detailing their expert opinions, and the facts and documents upon which they were based," giving "Huansong a significant advantage since Huansong did not reciprocate" and has "never identified any expert witnesses" nor "produce[d] any expert reports by the deadline" set by this Court in the Consent Amended Scheduling Order. *Id.* Baja argues that it was only "[a]fter Huansong had materially weakened its position in this litigation by missing its deadline to identify experts and serve expert reports, and after this Court denied Huansong's eleventh-hour requests to extend that deadline," that Huansong claimed the existence of a governing arbitration agreement. *Id.*

Finally, Baja counters Defendants' arguments against a finding of waiver by distinguishing the present case from the cases relied on by Defendants. *Id.* Baja runs through a list of the "extensive pre-trial activities," "trial-oriented activities and corresponding costs" in order to distinguish this case from *Rota-McLarty*. *Id. Rota-McLarty* is a Fourth Circuit case which did not find waiver based on a "relatively short" delay of, at most, six and a half months and limited litigation activities which are described as "mostly minimal." *Rota-McLarty*, 700 F.3d at 703–04. The court in *Rota-McLarty* issued a scheduling order requiring a status report, then issued a modified scheduling order, and the motion to compel arbitration and stay the case

was filed before expert reports were due or the close of discovery. *Id.*; ECF No. 81-7. Thus, the moving party in *Rota-McLarty* "removed the complaint to federal court, filed an answer, proposed a bifurcated discovery plan, took Rota-McLarty's deposition . . . and waited for clarity in the law in order to avoid class arbitration." *Rota-McLarty*, 700 F.3d at 704. Additionally, the non-moving party in *Rota-McLarty* "engaged in some discovery as well, which resulted in [the moving party's] production" of a "smoking gun" document. *Id.*

Defendants Motion to Compel Arbitration and Stay Proceedings foresaw Baja's argument that Huansong waived its right to compel arbitration, and argues that a delay of a short period of time and limited pretrial activity "is not waiver, and all of Huansong's actions have been consistent with its right to arbitrate." ECF No. 79-1. Defendants posit that the eight months between "the time Huansong was served until the filing of this Motion" is "simply insufficient to demonstrate that the opposing party suffered actual prejudice." *Id.* Defendants rely heavily on *Rota-McLarty*, in asserting that the current eight month delay is insufficient, without more, to demonstrate actual prejudice. *Rota-McLarty*, 700 F.3d at 703 ("We have previously held that a delay of several months, without more, is insufficient to demonstrate the opposing party suffered actual prejudice."). Additionally, Defendant's point out that "the moving party's reason for delay is not relevant to the default inquiry under our precedent." *Id.*

Defendants, in their Motion, argue that the parties have engaged in only limited litigation activities, and have not engaged in any "'trial-oriented' activities, such as the drafting of dispositive or pre-trial motions." ECF No. 79-1. Moreover, Defendants state that depositions have not been taken, and that the "testing of the scooters was

not completed in connection with this litigation" and is therefore irrelevant. *Id.*; *contra* ECF No. 81 (arguing these expert reports are not simply a compilation of work Baja performed in 2009-2010). Defendants assert that informal discovery, meeting with officers and employees, and obtaining documents and interrogatory answers could not have caused Baja substantial prejudice. ECF No. 83. Defendants argue that "[r]eviewing documents and preparing chronologies are the same types of activities that Baja would have had to do in connection with the arbitration." *Id.* Defendants argue that the nature and extent of litigation "activity in this case is not so materially different from the activity in *Rota-McLarty* to compel a finding of waiver." *Id.*; *See Rota-McLarty*, 700 F.3d at 703 ("Although incurring significant expense as a result of extended litigation can be part of prejudice, such cases usually involve resources expended specifically in response to motions filed by the party who later seeks arbitration.").

Defendants, in their response to Baja's supplemental memorandum in opposition, object to Baja's inclusion of over "$33,000 in attorney's fees and costs it spent responding to Defendants' Motion for Summary Judgment" as evidence of actual prejudice. ECF No. 89. Defendants assert that "Baja could have avoided spending these attorney's fees by merely joining in the Defendants' request that the Court stay Plaintiff Baja's Response deadline until a ruling is entered on the Motion to Compel Arbitration." *Id.* Defendants also object to Baja's reliance on their Motion for Summary Judgment as an example of trial oriented activity inconsistent with their right to compel arbitration, as Defendants only filed the summary judgment motion because the deadline for motions, as set out in the Consent Amended Scheduling

Order, was April 24, 2014. *Id.*; *see* ECF No. 44. Defendants cite to *Maxum*, in which the Fourth Circuit explained that "[a] party confronted with a claim of arbitrability may pursue an order insulating it from discovery that could not be had if the underlying claim is properly the subject of arbitration," but "[a]bsent a protective order . . . the party seeking arbitration does not lose its contractual right by prudently pursuing discovery in the face of a court ordered deadline." *Maxum*, 779 F.2d at 983.

Defendants also counter Baja's argument that CIETAC arbitration procedures will substantially prejudice Baja. ECF No. 83. Defendants assert that Baja's argument that it will be prejudiced because CIETAC arbitration procedures are different from the Federal Rules of Civil Procedure is without merit. *Id.* "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). "The invalidation of such an agreement . . . would not only allow the respondent to repudiate its solemn promise but would, as well, reflect a parochial concept that all disputes must be resolved under our laws and in our courts." *Id.* Defendants argue that "having agreed to arbitrate pursuant to the CIETAC Rules, Baja should not now be permitted to use those very rules to claim prejudice." ECF No. 83. Defendants argue that document disclosure is available under CIETAC rules contrary to Plaintiff's assertions, and that CIETAC rules have been amended twice since 2000, most recently in 2012, in order to bring the rules more in line with international practices. ECF Nos. 83, 83-4, & 83-5; China International Economic and Trade Arbitration Commission Arbitration Rules, Article 39(2) (May 1, 2012),

cn.cietac.org/Rules/rules.pdf ("The arbitral tribunal may specify a time period for the parties to produce evidence and the parties shall produce evidence within the specified time period."); China International Economic and Trade Arbitration Commission Arbitration Rules, Article 41(1) (May 1, 2012), cn.cietac.org/Rules/rules.pdf ("The arbitral tribunal may, on its own initiative, undertake investigations and collect evidence as it considers necessary."). Defendants also assert that Baja fails to show how Huansong gained an advantage, emphasizing that "Baja makes only conclusory statements that Huansong has benefitted from the documents produced."  ECF No. 83; *see Patten Grading & Paving, Inc.*, 380 F.3d at 207 ("Further, Patten fails to demonstrate that Skanska availed itself of discovery procedures unavailable in arbitration, or gained a strategic advantage through its discovery requests."); *Maxum*, 779 F.2d at 983 (stating that a party did not waive its right to arbitration as it "received no benefit from discovery initiated by it before it sought dismissal in favor of arbitration").

Defendants additionally argue that international arbitration clauses are held to a higher standard than domestic arbitration clauses.  ECF No. 83.  Defendants assert this Court must refer this dispute to arbitration unless the arbitration agreement itself is "null and void, inoperative or incapable of being performed."  Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. II(3).  "The 'null and void' language must be read narrowly, for the signatory nations have jointly declared a general policy of enforceability of agreements to arbitrate."  *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 53 (3d Cir. 1983).  Therefore, "an agreement to arbitrate is 'null and void' only (1) when it is

subject to an internationally recognized defense such as duress, mistake, fraud, or waiver . . . or (2) when it contravenes fundamental policies of the forum state." *Id.*

"Arbitration is meant to streamline the proceedings, lower costs, and conserve private and judicial resources, and it furthers none of those purposes when a party actively litigates a case for an extended period only to belatedly assert that the dispute should have been arbitrated, not litigated, in the first place." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 209 (3rd Cir. 2010).  Looking at the two primary factors for analyzing a claim of actual prejudice, the length of delay in this case was eight months, but more importantly, this case involved extensive discovery, trial preparation, and disclosures made in response to Huansong's requests.   This substantial trial-oriented activity involved considerable expenses to Baja that it would not have otherwise incurred.  Additionally, Huansong has availed itself of discovery procedures that would be unavailable or greatly limited in arbitration, as it has engaged in extensive discovery and received information and expert witness reports. *See* ECF No. 83-4 at 5, 11, 16-17 (stating that although "arbitral tribunals established under the CIETAC Rules in principle have the power to order production of documents" and regularly do so, CIETAC Rules do not contain "specific rules as to the production of documents" and only "contemplate the principle that the arbitral tribunal may, as it considers necessary, collect evidence on its own" or "order a party to produce documents to an expert or appraiser"); ECF No. 83-5 at 14 (explaining that "there is no formal disclosure process" and "no established procedure for disclosure or discovery," though a party may "request that the other party provide specific documents or types of documents").   This Court finds that Huansong's

attempt, at the close of discovery, to stay this lawsuit and start over in CIETAC arbitration after forcing Baja to engage in significant trial-oriented activity with considerable expenses, and after Huansong has already benefitted from discovery not available under CIETAC rules, would cause actual prejudice to Baja. Accordingly, this Court holds that, although a valid agreement to arbitrate exists, Huansong is in default in proceeding with such arbitration and has waived the right to enforce the arbitration provision, because Baja would suffer actual prejudice if the arbitration agreement were enforced.

**III. Scope of the Agreement to Arbitrate**

As this Court concludes that Huansong has waived its right to enforce arbitration, this Court will not address Baja's final argument that "even if there is a valid agreement to arbitrate . . . that agreement does not cover all disputes and does not cover all parties." ECF No. 81.

<u>Conclusion</u>

Defendants Huansong and Hisun have met their burden of showing that a valid arbitration agreement exists. Defendants have provided pro forma invoices, containing an arbitration agreement, which were signed by a representative of Baja. ECF No. 79-2. Defendants have also provided Godfrey's affidavit, detailing a meeting where Godfrey, acting on behalf of Baja, agreed with Song Li, acting on behalf of Huansong, that the purchase of scooters would be subject to arbitration in Beijing, China. ECF No. 79-3. As a result, the burden shifted to Baja to demonstrate that arbitration should not be ordered. After a thorough review, this Court finds Baja met its burden by showing that it would be actually prejudiced, given the amount of

the delay, the extent of Defendants' trial-oriented activity, and Defendant's utilization of discovery procedures unavailable in CIETAC arbitration.   Therefore, this Court finds that Huansong has waived its right to enforce the arbitration agreement.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Arbitration and Stay Proceedings is DENIED.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

June  16 , 2014
Anderson, South Carolina